UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TERESA WATSON

    Plaintiff,

v.

J.C. PENNEY, LISA LEWIS, and JULIE BRIDDELL,

    Defendants.

Case No. 24-cv-1636-JPG

## MEMORANDUM AND ORDER

    This matter comes before the Court for review of the claims Watson attempts to plead in an Amended Complaint (Doc. 11). The Court will allow her to proceed *in forma pauperis* only where the pleading states a claim and is not frivolous or malicious, *see* 28 U.S.C. § 1915(e)(2)(B), as explained in the Court's July 2, 2024, order (Doc. 7) reviewing the original Complaint. If a pleading fails to state a claim, the Court must dismiss the case any time it determines the action fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). To state a claim, a complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    In its July 2, 2024, order, the Court allowed Watson to proceed against defendant J.C. Penney for claims of discrimination on the basis of sex in the form of sexual harassment and retaliation. This was based on Watson's allegations in the EEOC charge she attached to the Complaint. The Court further allowed her to amend her complaint to allege facts to plausibly

suggest she is entitled to relief on other claims that were not adequately pled in her original Complaint—namely, discrimination on the basis of age, color, disability, national origin, race, and religion. Watson has filed a 21-page Amended Complaint attempting to do that. Unfortunately for Watson, the proposed Amended Complaint pleads facts that do not plausibly suggest she has a right to relief on *any* ground except for one, even those the Court allowed her to proceed on earlier. Thus, the Court must dismiss all claims in this case, save one, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      Facts Alleged**

In the Amended Complaint, Watson describes details of her work environment at the salon at J.C. Penney in Fairview Heights. The Court recaps the highlights:

Watson is Black, a woman, heterosexual, and Christian. She is, by her own description, an "American of the African transatlantic slave trade descendant community." Am. Compl. 4 (Doc. 11). At the time of these events, she was 57 years old.

She started working as a stylist in the salon in late February/early March 2023. Before she began working, Lisa Lewis, a White woman who was the salon manager and Watson's direct supervisor, told Watson she would only have to cut men's hair. At the beginning, Watson worked three days a week. Lewis was always there to greet her. Julie Briddell was another J.C. Penney employee in supervisory role. The salon employees ranged in age from 30 to 62 except for the receptionist, Anna, who was in her early 20s. Lewis supported the queer community.

When Watson started, her station was the closest to the desk so she could answer the phone as well as cut hair.

Watson cut men's hair and did some other cuts. Lewis said she would make announcements over the intercom to solicit more men clients but she never did. Lisa also

refused to get a certain hair care produce that Watson liked to use when she cut hair.

Lewis encouraged—even pressured—Watson to learn and practice a hair straightening technique known as a "silk press" rather than natural hair styles. Lewis assumed Watson knew how to do silk presses, but Watson did not and did not want to learn. Nevertheless, Lewis paired her with a stylist who did that style. In late April 2023, after Watson refused to do silk presses, she was reduced to working one day a week. Lewis continued to ask Watson to do silk presses up to her termination.

The salon overcharged Black clients and undercharged White ones. At one point, there was a dispute over whether a Black stylist should have charged a Black customer for cutting her child's hair, and a White stylist expressed the opinion that the customer should pay the charge. Watson believed that the amount she was quoted to receive a service on her own hair was too much. Later Watson learned that the service was available at a lower cost.

On one occasion, Lewis asked Watson to watch her perform a product returned by a customer beyond the allowed return date. At other times, Lewis blocked Watson from seeing the computer screens in the salon and discouraged her from taking notes to prevent her from learning how to use the computer programs. Lisa offered, but then failed, to find videos of use of the computer.

One stylist, Barbara, did not like people working close to her, and she expressed her displeasure with mean words or bumping into the targets of her displeasure. She once talked to Watson in a hostile voice and once bumped into her by the cash register. Lisa knew about Barbara's hostility and did nothing about it. Watson was offered the opportunity to work on Thursdays, when Barbara and Lewis were not in the salon, but decided to work Fridays instead because it was more lucrative.

Lewis interrupted Watson from socializing with other stylists during slow work times even though Watson was educating herself about hair styling from others.

In Watson's opinion, Lewis wanted to be worshipped like God. Other stylists mentioned their churches in the salon but not biblical teachings.

Another Black stylist, Dee, continually complimented Watson even after she told Dee it made her uncomfortable. Dee, a woman, had a heavy, masculine voice.

Once when a new employee was hired, Briddell shared the national origin of that employee with the rest of the employees.

In April 25, 2023, Watson wrote letters to the CEO and the owner of J.C. Penney complaining about Lewis, Barbara, and other things in the salon. She received to response to her letters.

Around July 2023, Watson injured her wrist outside of work. Lewis texted saying she was sending prayers Watson's way, not to God, and texted several times to see how Watson was doing. Watson did not receive a card from the salon employees, and one of the stylists was discouraged from doing Watson's hair while Watson was out on medical leave. While on medical leave, Watson visited the salon and asked for Anna so she could retrieve a bag of candy she had left there. Watson ended up leaving it for everyone in the salon to enjoy. In September 2023, Lewis told Watson the computer would terminate her employment if she did not clock in by a certain date even though her wrist had not fully healed. She offered for Watson to return to a cashier job in the larger J.C. Penney store. Watson returned to work in the salon on October 20, 2003.

Employees were given the benefit of a free haircut, but this was not the styling service Watson needed. She did not discover this until she had already taken her braids down and was at

the shampoo bowl.

Employees had to have their purses and other bags checked when they left the salon. When Lisa was not available to check the bags, other stylists requested a manager on the store intercom, but Watson was required to go to the security office for the check. Anna offered to show Watson where the security office was when Watson returned from medical leave. Anna stopped suddenly in front of Watson and caught up with her later and walked in front of her to the security office. After her first security office bag-check, Watson was allowed to return to the regular procedure.

Salon staff were required to attend inclusion and diversity training on November 7, 2023, beginning at 10:45 a.m. Some employees were told how long the training would last; others, including Watson, were not. The trainer was a White woman. Watson thought the training materials J.C. Penney provided belittled Black people, in part, because it referred to "black, indigenous, and people of color" as "bipoc."

Another stylist, Jackie, was the last to arrive at the meeting and enthusiastically greeted Watson from across the room, although they had never met before.

During the meeting, Watson announced that she was "openly heterosexual" and provided information to clarify others' comments or confusion that she thought needed clarification. She did this in an effort to improve the "vibes" she felt in the salon. She also spoke about sexual sins. Watson later told Jackie she was not into pedophilia or dead people.

On November 10, 2023, Lewis and Briddell met with Watson. They displayed a misunderstanding of her comments at the training. Lewis had an exaggerated response to Watson's one-time use of the word "queer" in the diversity training and noted that Lewis and others were offended by the word. Briddell criticized her for sharing that she was openly

5

heterosexual when she volunteered that information in good faith.  Later that day, Briddell informed Watson by phone that she had been terminated.  She never received written notice of her termination.

## II.     Analysis

Watson's proposed amended complaint immediately calls to mind the admonition that "the court is not a super personnel department that second-guesses employers' business judgments."  *Galvan v. Indiana*, 117 F.4th 935, 939 (7th Cir. 2024) (internal quotations omitted).  Watson can get no relief from the Court for most of her gripes, as serious as they may be, unless they state a claim for violation of the law.  It is true that Watson complains about a lot of things she found wrong with her workplace.  However, she suffered very few adverse employment actions:  her hours were reduced from three days to one day a week; her working environment was hostile; and she was terminated from her position.  Not to belittle any of these actions—they can be, and often are, serious—with one exception, Watson's complaint does little, if anything to tie these actions to any of her protected categories.  And at the pleading stage in a discrimination case, the plaintiff must plead facts that plausibly suggest she has a right to relief above a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  She has not done so for most of the claims she tries to advance.

The only claim Watson has pled facts to show a plausible right to relief above a speculative level is a claim for sex discrimination based on her sexual orientation—"openly heterosexual."  This can be reasonably inferred from the fact that she was terminated in close temporal proximity to her openly announcing her sexual orientation, and the mentioning of that being inappropriate in the meeting immediately preceding her termination.  Watson has failed to plead facts supporting any other cause of action, so the Court must dismiss them.  The only cause

of action on which she may proceed *in forma pauperis* is that she was fired in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because of her sexual orientation. *See Bostock v. Clayton Cty.*, 590 U.S. 644, 683 (2020).

One procedural matter needs to be corrected. There is no indication Watson served J.C. Penney with her Amended Complaint as required by Federal Rule of Civil Procedure 5(a)(1)(B).[1] She was required to do so by one of the methods in Rule 5(b)(2)[2] and to file a certificate of that service a reasonable time after it was accomplished as provided in Rule 5(d)(1). The Court will give her a reasonable period of time to remedy this shortcoming

---

[1] Service is not required on a defendant who is in default for failing to appear, *see* Fed. R. Civ. P. 5(a)(2), but since Watson filed her Amended Complaint on July 19, 2024, and the United States Marshals Service did not serve J.C. Penney until August 20, 2024, J.C. Penney was not in default when Watson filed her amended pleading.

[2] Rule 5(b)(2) states:
>   **(2)** *Service in General.* A paper is served under this rule by:
>       **(A)** handing it to the person;
>       **(B)** leaving it:
>           **(i)** at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
>           **(ii)** if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>       **(C)** mailing it to the person's last known address—in which event service is complete upon mailing;
>       **(D)** leaving it with the court clerk if the person has no known address;
>       **(E)** sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing—in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or
>       **(F)** delivering it by any other means that the person consented to in writing--in which event service is complete when the person making service delivers it to the agency designated to make delivery.

**III.     Conclusion**

For the foregoing reasons, the Court:

- **DIRECTS** the Clerk of Court to change the docket text to reflect that Document 11 is an Amended Complaint;

- **DIRECTS** Watson to serve the Amended Complaint on defendant J.C. Penney in the manner provided in Federal Rule of Civil Procedure 5(b)(2) and to file a certificate of that service within a reasonable time after that service as required by Rule 5(d)(1);

- **DISMISSES without prejudice** all claims in the Amended Complaint other than a claim under Title VII for discrimination on the basis of sexual orientation when Watson was terminated from her employment;

- **ORDERS** that defendant J.C. Penney shall have 30 days from service of the Amended Complaint pursuant to Rule 5(b)(2) to answer or otherwise respond to the sole claim in the Amended Complaint that the Court has allowed to proceed; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  January 14, 2025**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**